DECISION
{¶ 1} Relator, Eugene F. Koza, initiated this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
{¶ 2} Pursuant to Civ.R. 53(C), and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of facts and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate concluded the commission abused its discretion because its determination of the residual medical capacity permitted by the psychiatric condition is not supported by some evidence. The magistrate also determined that the commission's "separate and independent" grounds for denial of the PTD application constituted an abuse of discretion because the failure to undergo rehabilitation or retraining cannot be a basis for denial of the application absent a threshold medical determination of residual medical capacity.
{¶ 3} The magistrate determined the fact that the commission "has exercised its discretion to reject the report of its own medical specialist does not give it cause to conclude * * * that the claimant has failed to meet his burden of proof on the PTD application. The commission must schedule relator for a new medical examination when the report of its specialist is rejected and there is no other evidence that the commission finds persuasive." Finally, the magistrate held that relief was inappropriate under State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315, and thus the magistrate concluded that a limited writ of mandamus was the appropriate remedy, ordering the commission to vacate its order of May 15, 2001 and to further process the PTD application and enter a new order either granting or denying said application.
{¶ 4} Relator has filed an objection, arguing that, rather than returning the cause to the commission for further consideration, the magistrate should have ordered the commission to proceed directly to judgment pursuant to Gay, supra. We disagree.
{¶ 5} The Ohio Supreme Court has held that relief under Gay "was intended as a narrow exception to the general rule of returning Noll-deficient orders to the commission," and such relief "will be granted only in extraordinary circumstances revealing an abuse of discretion." State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373, 376. The court has further held that, generally, in cases in which Gay relief has been recommended, "the commission's order has coupled vocationally unfavorable evidence with medical evidence that assessed a relatively high degree of physical impairment." State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693, 697.
{¶ 6} In the instant case, we do not find that the commission's order, as it relates to the vocational evidence and degree of physical impairment, presents the type of extraordinary circumstances contemplated by Gay. Further, because the commission found the report of Dr. Rowe to be inconsistent, the extent of relator's psychiatric condition has not yet been determined. This court has previously adopted a magistrate's decision finding that a limited writ, rather than relief under Gay, is the appropriate remedy where a psychiatric report cited by the commission did not support a finding that the psychiatric claim allowance permitted sustained renumerative employment. State ex rel. Valentine v. Indus. Comm. (Apr. 8, 2003), Franklin App. No. 02AP-579. Accordingly, relator's objection is overruled.
{¶ 7} Based upon this court's independent review, pursuant to Civ.R. 53, we overrule relator's objection and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, this court issues a writ of mandamus ordering the commission to vacate its order of May 15, 2001, to further process relator's PTD application consistent with the magistrate's decision, and to enter a new order that either grants or denies the PTD application.
Objection overruled; writ granted.
LAZARUS and WATSON, JJ., concur.
APPENDIX A
{¶ 8} In this original action, relator, Eugene F. Koza, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
{¶ 9} 1. On May 9, 1979, while employed as a "welder-fitter" for respondent Wason Corporation ("Wason") relator sustained an industrial injury which was initially allowed for: "broken right great toe," and assigned claim number 79-11365. In 1982, the claim was additionally allowed for: "aggravation of pre-existing somatoform disorder [and] numbness in arms below elbow, possible neuropathy caused by using his crutches."
{¶ 10} 2. On July 27, 1999, relator filed an application for PTD compensation. On the application relator indicated that the last day he had worked was March 7, 1980.
{¶ 11} Under the "education" section of the application, relator indicated that he completed two years of college at Stark College in business management and real estate, and this occurred in 1985.
{¶ 12} 3. The application form posed three questions to the applicant: (1) "Can you read?"; (2) "Can you write?"; and (3) "Can you do basic math?" Given the choice of "yes," "no," and "not well," relator selected the "yes" response to all three queries.
{¶ 13} 4. Under the "work history" section of the PTD application, relator stated that he was a "Plant Sup[erintenden]t" from November 1979 to March 1980. In that position, it was his duty to "manage and assign duties to 27 men."
{¶ 14} 5. In support of his PTD application, relator submitted a report dated July 13, 1998, from his treating physician Gary G. Lehman, M.D., who practices medicine in Orlando, Florida. Dr. Lehman's report states:
{¶ 15} "* * * Mr. Koza had an industrial accident involving a large high beam structure which twisted while it was being cut off and fell on his right foot with resultant fracture. This was apparently quite a large structure and if it had not twisted it would have certainly crushed him, according to his recollection. He has suffered a somatoform disorder since that time.
{¶ 16} "The patient has been retrained, but has not been able to find gainful employment and he has, in fact, seen psychiatric help who [sic] have tried numerous medications in regard to the somatoform pain disorder and he has not been able to overcome his fear and return to work.
{¶ 17} "I do not feel that at this point given the prior treatments and prior consultations that he is likely to have any dramatic improvement in his condition and I do not feel that he will be able to return to gainful employment. * * *"
{¶ 18} 6. Relator's PTD application prompted the commission to schedule relator for an examination which was performed by Geeta Narula, M.D., of Orlando, Florida, on October 28, 1999. Dr. Narula examined relator only for the allowed physical conditions of the claim. Dr. Narula did not examine for the allowed psychiatric condition. Dr. Narula reported:
{¶ 19} "* * * Percentage of permanent impairment arising from the highlighted conditions in the claim are for fracture right great toe — 2% impairment of the person as a whole, and for upper extremity neuropathy — 10% impairment of the person as a whole. * * * [I]t is my opinion that the claimant cannot perform any of the activities of his former position of employment. On the basis of his physical deficits alone, it would be possible for him to perform sustained renumerative [sic] activity in a sedentary type of position; however, his psychiatric problem interferes with his ability to work."
{¶ 20} 7. The PTD application also prompted the commission to schedule relator for an examination which was performed by psychiatrist Guillermo Cadena, M.D.P.A., on November 3, 1999. Dr. Cadena wrote:
{¶ 21} "It is my professional opinion that Mr. Koza has reached maximum medical improvement and that his degree of impairment falls within the moderately severe, placing him in a Class IV, with a percentage of approximately 20%.
{¶ 22} "Furthermore, I do believe that the psychiatric condition was a pre-existing condition, primarily driven by the claimant[']s secondary gains, most unlikely to respond to any psychiatric intervention."
{¶ 23} 8. Dr. Cadena completed an occupational activity assessment report dated December 29, 1999. This form asks the examining psychiatrist the following two-part query:
{¶ 24} "Based on the impairment resulting from the allowed/alleged psychiatric/-psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required:
{¶ 25} "[a] To return to any former position of employment?
{¶ 26} "[b] To perform any sustained remunerative employment?"
{¶ 27} Dr. Cadena responded in the negative to the above two-part query.
{¶ 28} 9. The commission requested an employability assessment report from Charles Loomis, a vocational expert. The Loomis report indicates that relator is "Not employable" based upon the reports of Drs. Cadena and Lehman. The Loomis report further states:
{¶ 29} "III EFFECTS OF OTHER EMPLOYABILITY FACTORS
{¶ 30} "* * * How, if at all, do the claimant's age, education, work history and other factors (physical, psychological and sociological) effect his ability to meet the basic demands of entry level occupations?
{¶ 31} "Age The claimant is closely approaching Advanced Age and participation in the workforce declines significantly by age 65 assuming no disability. Age would therefore, appear to be at least a moderately limiting factor.
{¶ 32} "Education The claimant has reportedly completed two years of college at Stark College in business management and real estate.
{¶ 33} "Work History The claimant engaged in complex Skilled work and supervised the work of others, suggesting high levels of ability for adapting to complex problem solving.
{¶ 34} "Other The claimant has a disallowed neck or back condition. The claimant has not participated in vocational rehabilitation and has expressed no interest in such participation.
{¶ 35} "* * * Does your review of the background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
{¶ 36} "The claimant's educational background at the college level would suggest that he obviously possesses the skills and abilities to perform entry level Sedentary and Light work.
{¶ 37} "* * * Are there significant issues regarding potential employability limitations or strengths that you wish to call to the SHO's attention?
{¶ 38} "The claimant is approaching advanced age and would ordinarily be retired from the workforce and has not worked in almost two decades. He receives Social Security benefits and does not appear to be focused on return-to-work objectives. He indicated that he is not interested in participation in rehabilitation services.
{¶ 39} "* * *
{¶ 40} "B. WORK HISTORY:
{¶ 41} "SKILL STRENGTH DATES
{¶ 42} "JOB TITLE * * * LEVEL LEVEL EMPLOYED
{¶ 43} "Welding Supervisor * * * Skilled Light 1979-1980
{¶ 44} "1962-1966
{¶ 45} "Welder Fitter * * * Skilled Medium 1966-1979
{¶ 46} "1960-1962."
{¶ 47} 10. Following a March 7, 2000 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The commission rejected the report of Dr. Lehman and accepted the reports of Dr. Narula. The commission apparently rejected the report of Dr. Cadena, stating:
{¶ 48} "Dr. Cadena states that the claimant is not capable of returning to any sustained remunerative employment, but he states that the symptoms are driven primarily by secondary gains. This report does not support a finding of permanent total disability. The claimant's motives and behavior are placed too much in doubt for this report to be the basis of a permanent total disability grant."
{¶ 49} 11. In its March 7, 2000 order, the commission, while rejecting the reports of Drs. Lehman and Cadena that address relator's allowed psychiatric condition, failed to determine relator's residual medical capacity with respect to the allowed psychiatric condition. The commission rejected two reports addressing the psychiatric condition, but cited to no medical evidence upon which it relied that established the residual medical capacity relating to the allowed psychiatric condition.
{¶ 50} 12. Relator filed in this court a mandamus action which was assigned case number 00AP-791. The action challenged the commission's order of March 7, 2000, denying the PTD application.
{¶ 51} 13. The mandamus action resulted in the parties filing a stipulation of dismissal that recited an agreement reached between relator and the commission.
{¶ 52} 14. In an order mailed November 20, 2000, the commission acknowledged the agreement reached in case No. 00AP-791. The commission vacated its SHO's order of March 7, 2000, ordered a new specialist examination for the allowed psychiatric condition, and a new or amended vocational evaluation. The commission further ordered that another hearing shall be scheduled before an SHO and that Dr. Cadena's reports shall not be further considered.
{¶ 53} 15. Pursuant to the commission's November 20, 2000 order, relator was examined by psychologist Anna Rowe, Ph.D., on December 19, 2000. The examination took place in Winter Park, Florida, where Dr. Rowe practices. Dr. Rowe wrote:
{¶ 54} "Social History:
{¶ 55} "Patient lives alone in an apartment. As stated, he has been separated from his wife since 1985. His main social contact is his daughter who lives in the area. His daughter had triplets born March 2nd, 2000. Patient visits daily and helps with the children. He stated this has given him a new lease on life and that he knows that he is needed and wanted.
{¶ 56} "* * *
{¶ 57} "Patient described a typical day as getting up between 4 and 5 a.m. and taking his medication. He fixes his own breakfast and takes care of personal hygiene. He reads the newspaper, calls his daughter, works out on the treadmill for approximately ten minutes, then finishes reading the newspaper. At around 10 a.m. in the morning he goes to a local jai-alai fronton where he bets ten dollars. Patient then spends between three and four hours at his daughter's helping and playing with the triplets. In the afternoon he naps for approximately one hour. He then prepares his own dinner, relaxes and watches TV and spends approximately ten more minutes on the treadmill.
{¶ 58} "Mental Status Exam:
{¶ 59} "Patient is a 68-year old white male, who walked somewhat stiffly and showed difficultly getting out of his chair in the waiting room. Patient mentioned this in the interview. He drove himself to the interview and was casually but appropriately dressed. Patient was cooperative and friendly. There was evidence of some mild depression, however, patient thinks he has a new lease on life since the birth and his involvement with his triplet grandchildren. Speech was coherent and relevant. There was no evidence of hallucinations, delusions or a thought disorder. Patient denied suicidal ideation. He was occupied with thoughts of his relationship and involvement with his work injury, and could describe in detail most aspects. Patient was oriented to time, place and person. His memory appeared intact and his intelligence appeared average. Insight, problem solving and judgement seemed to range from average to below average.
{¶ 60} "Opinion:
{¶ 61} "It is the opinion of the examiner that Mr. Koza has reached maximum medical improvement. It is recommended that medical management for his antidepressant and pain medication be maintained. Other psychiatric or psychological care would probably not be productive.
{¶ 62} "Based on Chapter 14 of the AMA Guides, Mr. Koza's percentage of impairment is 15% for the allowed condition. The following breakdown is noted:
{¶ 63} "Activities of daily living — mild impairment (Class 2)
{¶ 64} "Social functioning — mild impairment (Class 2)
{¶ 65} "Concentration — no impairment (Class 1)
{¶ 66} "Adaptation — moderate impairment (Class 3)
{¶ 67} "Mr. Koza has not worked since approximately 1980. He has multi-physical complaints of numbness, neck and back pain, and gait problems, plus a history of depression and anxiety, which is perceived as not allowing him to be able to work. At present patient is living on his own. Patient has some motivation and has social interests which include visiting his daughter and helping with his three grandchildren, and also attending jai-alai daily. Patient also exercises two times a day. However, he becomes tired easily and naps daily."
{¶ 68} 16. Dr. Rowe also completed an occupational activity assessment form dated January 3, 2001. The form asks the examining doctor to respond to the following query:
{¶ 69} "Based on the impairment resulting from the allowed/alleged psychiatric/-psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required:
{¶ 70} "[a] To return to any former position of employment?
{¶ 71} "[b] To perform any sustained remunerative employment?"
{¶ 72} Dr. Rowe responded in the negative to the two-part query.
{¶ 73} 17. On February 26, 2001, Mr. Loomis issued an addendum to his December 30, 1999 employability assessment report. Indicating acceptance of Dr. Rowe's reports, Loomis indicated, under "employment options," that relator is "Not employable." Loomis further wrote:
{¶ 74} "Dr. Rowe in her psychological report of 12-19-00 opines that Mr. Koza cannot return to his former employment or to other employment based upon the pre-existing condition of somatoform disorder. She however, gave him an Axis V Global Assessment of Functioning (GAF) of 68 which suggests that he has some mild psychological symptoms but should generally function pretty well and have some meaningful relationships. She also notes no impairment with concentration, mild impairment with activities of daily living and concentration and a moderate impairment with respect to adaptation. Based upon descriptions of daily functioning, it would appear that psychological symptoms that were evident would be insufficient to preclude participation in his previous employment or in other employment."
{¶ 75} 18. Following a May 15, 2001 hearing, an SHO issued an order denying relator's PTD application filed July 27, 1999. The SHO's order states:
{¶ 76} "Claimant is currently 69 years of age. He is a high school graduate with two years of college experience. He has prior work experience as a skilled welder, including time as a shop foreman and finally worked as the plant superintendent at the time of his injury.
{¶ 77} "Claimant has one allowed industrial injury. On 05/09/1979 a beam fell on his foot breaking his right great toe. The claimant later developed a numbness in his arms which was found to possibly represent neuropathy caused by the use of crutches. The claim has also been allowed for a psychological condition. The claimant has not worked since 03/07/1980.
{¶ 78} "In support of his application to be awarded permanent and total disability compensation, the claimant submits a 07/13/1998 letter from Gary G. Lehman. Dr. Lehman states that he has been the claimant's attending physician since 1996. Dr. Lehman's explanation of the claimant's disability reads as follows:
{¶ 79} "`The patient has been retrained, but has not been able to find gainful employment and he has, in fact, seen psychiatric help would have tried numerous medications in regard to the somatoform pain disorder and he has not been able to overcome his fear and return to work. [Sic.]
{¶ 80} "[']I do not feel that at this point given the prior treatments and prior consultations that he is likely to have any dramatic improvement in his condition and I do not feel that he will be able to return to gainful employment. * * *'
{¶ 81} "In processing claimant's application to be awarded permanent and total disability compensation the Industrial Commission referred the claimant for an 10/28/1999 examination by Getta Narula, M.D., a physical medicine and rehabilitation specialist. Dr. Narula concluded that the claimant has a 2% impairment as a result of his allowed fractured right great toe and a 10% impairment of the whole person as a result of right upper extremity neuropathy. Dr. Narula completed an Occupational Activity Assessment Form as a part of his report. Dr. Narula states that the claimant has no restrictions in sitting. Dr. Narula states that, in an 8 hour day, the claimant can stand or walk from three to five hours and can lift or carry up to 20 lbs. Dr. Narula further states that the claimant can frequently handle materials and at least occasionally climb stairs and ladders or reach overhead or to waist level. The Staff Hearing Officer adopts the conclusions contained in Dr. Narula's report with respect to claimant's residual functional capacities when all allowed physical conditions are considered.
{¶ 82} "Claimant was also referred by the Industrial Commission for a 11/03/1999 psychiatric evaluation by Guillermo M. Cadena, M.D. The report of Dr. Cadena has not been considered in reaching this order, as was directed by the order of 11/06/2000.
{¶ 83} "Consistent with the order mentioned in the previous paragraph, claimant was referred for a second psychiatric evaluation which was performed on 12/19/2000 by Anna Rowe, Ph.D. Dr. Rowe's examination report states that the purpose of her exam is maximum medical improvement. Dr. Rowe notes that the claimant had a stroke on 07/01/1990. Dr. Rowe's report is particularly noteworthy because of the following paragraph:
{¶ 84} "`Patient described a typical day as getting up between 4 and 5 a.m. and taking his medication. He fixes his own breakfast and takes care of personal hygiene. He reads the newspaper, calls his daughter, works out on the treadmill for approximately ten minutes, then finishes reading the newspaper. At around 10 a.m. in the morning he goes to a local fai-alai frontan where he bets ten dollars. Patient then spends between three and four hours at his daughter's helping and playing with the triplets. In the afternoon he naps for approximately one hour. He then prepares his own dinner, relaxes and watches TV and spends approximately ten more minutes on the treadmill.'
{¶ 85} "Dr. Rowe performed a mental status exam in which he [sic] states that the claimant demonstrated evidence of mild depression but that he states that he thinks that he has a new lease on life since the birth of and his involvement with his triplet grandchildren. Speech was coherent and relevant. Insight, problem solving and judgement seem to range from average to below average. Dr. Rowe concluded that the claimant has an overall 15% permanent partial impairment from the allowed condition which he broke down as follows: For activities of daily living the claimant has a mild impairment. For concentration the claimant has no impairment. For adaptation, the claimant has moderate impairment. Dr. Rowe then came to the final conclusion that the claimant is not able to perform any sustained remunerative employment, based upon this examination.
{¶ 86} "Following Dr. Rowe's report, the file was referred for a Vocational Assess-ment Addendum on 02/26/2001 by Charles Loomis, MED, a vocational expert. Mr. Loomis noted that the claimant has a Global Assessment of Functioning as rated by Dr. Rowe of 68, `which suggests that he has some mild psychological symptoms but should generally function pretty well and have some meaningful relationships. She also notes no impairment with concentration, mild impairment with activities of daily living and concentration and a moderate impairment with respect to adaptation. Based upon descriptions of daily functioning, it would appear that psychological symptoms that were evident would be insufficient to preclude participation in his previous employment or in other employment.'
{¶ 87} "The Staff Hearing Officer denies claimant's application for permanent total disability on two separate and independent grounds.
{¶ 88} "First, the claimant has not made an effort at rehabilitation which is consistent with his capacities during the 22 years since his industrial injury. Claimant is an individual with substantial and supervisory experience, his last job involving supervising 27 to 35 people according to his application. His application states that he is able to read blueprints and write out progress reports on the individuals working under him. He has been engaged in skilled work. He has two years of college. Taking these factors together, the claimant clearly demonstrated that he had the intellectual and other capacities to acquire skills which would be consistent with work which did not require substantial physical exertion. Nevertheless, the claimant has not engaged in these rehabilitation efforts.
{¶ 89} "Alternatively, the Staff Hearing Officer finds that the medical evidence of record does not support a finding that the claimant is permanently and totally disabled. The report of Dr. Lehman, submitted in support of the application, provides no explanation whatsoever for his conclusion that the claimant is permanently and totally disabled.
{¶ 90} "The report of Dr. Rowe, as discussed above, describes an individual with moderate to slight psychological impairments who has adapted well to a retired life style. Particular attention is drawn to the description of claimant's daily activities. The Staff Hearing Officer finds that the minor impairments found by Dr. Rowe are not consistent with her conclusion that the claimant is permanently and totally impaired, finds that the report is internally inconsistent, and on that ground rejects the conclusion that the claimant is permanently and totally disabled from his allowed psychological condition as contained in that report. Significant in this evaluation, although it cannot be formally relied upon for this conclusion, are the statements of Vocational Evaluator Loomis that the claimant's global assessment of functioning as found by Dr. Rowe and her descriptions of his daily functioning are insufficient to preclude participation in employment.
{¶ 91} "Under Industrial Commission guidelines, the claimant is a person closely approaching advanced age. His age is a negative factor in evaluating his reemployment potential.
{¶ 92} "The claimant has substantial supervisory experience, two years of college, the ability to read blueprints and evaluate the work of other employees. The claimant clearly has the fundamental skills required for entry level clerical and similar positions. The claimant's education and prior work experience are strongly positive factors in evaluating his reemployment potential.
{¶ 93} "Claimant is physically able to engage in sedentary and much light work, so long as it does not involve large amounts of the use of his affected upper extremity. The evidence concerning his psychological condition is severely flawed, but generally supports the conclusion that the claimant has adapted well to a retired life style and is not seriously disabled psychologically notwithstanding the fact that he is highly unlikely to choose to return to gainful employment. Taking all these factors together, a proper understanding of the evidence of record supports the conclusion that the claimant could engage in sustained remunerative employment.
{¶ 94} "The reports from the physicians who have examined the claimant clearly indicate that it is unlikely that he will return to the workforce. He has not worked in approximately twenty years and has adapted. Nevertheless, these reports do not support the conclusion that the claimant is unable to engage in all forms of sustained remunerative employment and, additionally, support the conclusion that he had the time and skills to acquire the ability to engage in sustained remunerative employment had he chosen to do so. The evidence of record does not support claimant's application to be awarded permanent and total disability compensation, and that application is again denied."
{¶ 95} 19. On August 26, 2002, relator, Eugene F. Koza, filed this mandamus action.
Conclusions of Law:
{¶ 96} Review begins with an analysis of the reasoning set forth in the commission's order at issue. The order states that the PTD application is denied "on two separate and independent grounds."
{¶ 97} The first ground is based upon a finding that relator "has not made an effort at rehabilitation * * * since his industrial injury."
{¶ 98} Alternatively, the PTD application is denied based upon a determination of relator's residual medical capacity and an analysis of how the non-medical factors combine with the residual medical capacity.[1] The commission seems to conclude that relator's combined residual medical capacity based upon all allowed conditions of the claim permits the performance of "sedentary and much light work." The combined residual medical capacity permitted by the physical and psychiatric conditions is seemingly determined by combining the residual medical capacity permitted by the allowed physical conditions with the commission's conclusion that relator is "not seriously disabled psychologically." The commission's conclusion that relator is "not seriously disabled psychologically" is premised upon its own medical analysis of relator's description of his typical day as recorded by Dr. Rowe in her report. The commission also seems to accept Mr. Loomis' medical analysis of relator's typical day while conceding in its order that Mr. Loomis' medical opinion "cannot be formally relied upon."
{¶ 99} In its so-called alternative ground the commission then proceeds to analyze the impact of the non-medical factors upon the previously determined residual medical capacity. Finding age 69 to be a negative factor, but relator's education and prior work experience to be "strongly positive factors," the commission ultimately concludes that relator can perform sustained remunerative employment and that the PTD application must be denied.
{¶ 100} The magistrate finds that both grounds presented by the commission for denial of the PTD application are seriously flawed. Accordingly, it is this magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
{¶ 101} It is well-settled that the commission must rely upon medical evidence in order to determine disability. State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm. (1998), 81 Ohio St.3d 56. Neither the commission nor its hearing officers have medical expertise. Id.
{¶ 102} The commission is free to accept or reject medical opinions of record in determining disability. However, it cannot fashion its own medical opinion from the findings contained in the medical reports such as might be done by a non-examining physician who is asked by the commission to review the medical evidence of record. See State ex rel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55, 59. (The non-examining physician is required to expressly accept all the findings of the examining physician, but not the opinion drawn therefrom.) State ex rel. Blue v. Indus. Comm. (1997), 79 Ohio St.3d 466.
{¶ 103} Here, for its so-called alternative ground, the commission rejected the report of relator's treating physician, Dr. Lehman, who opined that the somatoform disorder prevents relator's return to gainful employment. The commission also rejected Dr. Rowe's opinion that the psychiatric condition precludes a return to the former position of employment and to any sustained remunerative employment. The commission reasoned that Dr. Rowe's reports were "internally inconsistent" because her disability opinion was premised upon her reporting of what the commission viewed as "minor impairments."
{¶ 104} It has been held that a medical report can be so internally inconsistent that it cannot constitute evidence upon which the commission can rely. State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445, 449; State ex rel. Taylor v. Indus. Comm. (1995),71 Ohio St.3d 582.
{¶ 105} There is no contention here that the commission abused its discretion in determining that Dr. Rowe's reports are internally inconsistent. Moreover, it is the commission which determines the weight and credibility to be given to the medical reports of record. State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 655.
{¶ 106} It is not the duty of this court, under the circumstances here, to second-guess the commission's finding that Dr. Rowe's disability opinions were unpersuasive. The commission articulated a reason for rejecting Dr. Rowe's reports that was well within its discretion in weighing the evidence before it.
{¶ 107} However, having rejected all the psychological/psychiatric medical opinions before it, the commission then proceeded to fashion its own medical opinion on the extent of psychiatric disability by conducting its own analysis of portions of Dr. Rowe's report, aided by Mr. Loomis' addendum report.
{¶ 108} In his addendum report, Mr. Loomis determined from Dr. Rowe's "Axis V Global Assessment of Functioning (GAF) of 68" that relator "has some mild psycho-logical symptoms but should generally function pretty well and have some meaningful relationships." Mr. Loomis further determined that, "[b]ased upon descriptions of daily functioning, it would appear that psychological symptoms that were evident would be insufficient to preclude participation in his previous employment or in other employ-ment."
{¶ 109} Mr. Loomis is not competent to render the above-noted opinions. Those opinions clearly overstep his area of vocational expertise and reach into the area of medical opinion. Accordingly, Mr. Loomis' addendum report does not constitute some evidence upon which the commission could rely to support its conclusion that relator is "not seriously disabled psychologically."
{¶ 110} While the commission seems to have paid lip service to well-settled law by stating that Mr. Loomis' report "cannot be formally relied upon," it, nevertheless, seems to have relied upon Mr. Loomis' analysis anyway. Clearly, the commission cannot rely upon Mr. Loomis' addendum opinion on psychiatric disability to support a finding as to the residual medical capacity permitted by the psychiatric claim allowance.
{¶ 111} In short, the commission's determination of the residual medical capacity permitted by the psychiatric condition is not supported by some evidence upon which the commission relied, and thus the commission's alternative ground for denial of the PTD application constitutes an abuse of discretion.
{¶ 112} The magistrate now returns to the commission's first so-called "separate and independent" ground for denial of the PTD application. As previously noted, the commission denied the PTD application solely upon the finding that relator "has not made an effort at rehabilitation which is consistent with his capacities during the 22 years since his industrial injury." This finding cannot be a "separate and independent" ground for denial of the PTD application. While the failure to undergo rehabilitation or retraining can be a non-medical factor for the commission to consider in adjudicating a PTD application, State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250, 253; State ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148, 153, it cannot be a basis for denial of the application absent a threshold medical determination of residual medical capacity. See Ohio Adm. Code4121-3-34(D)(2)(a) and (b).
{¶ 113} Moreover, even the commission's conclusion that relator has not made an effort at rehabilitation since the date of his industrial injury is seriously flawed. The evidence is undisputed that relator completed two years of college in 1985 long after his industrial injury of July 27, 1979. Doesn't taking college level course work qualify as an effort at rehabilitation that might further relator's employment opportunities? The commission's order nevertheless states:
{¶ 114} "* * * [T]he claimant clearly demonstrated that he had the intellectual and other capacities to acquire skills which would be consistent with work which did not require substantial physical exertion. Nevertheless, the claimant has not engaged in these rehabilitation efforts."
{¶ 115} The commission's order fails to identify the skills that relator allegedly failed to acquire despite an intellectual ability to do so. The commission's discussion of relator's alleged failure to make an effort at rehabilitation is perplexing. The commission even notes that relator "has two years of college." If the commission was aware that relator had completed two years of college, how did relator fail to vocationally rehabilitate or retrain for other employment?
{¶ 116} In short, both of the so-called "separate and independent" grounds for denial of the PTD application constitute an abuse of discretion.
{¶ 117} In this action, the commission argues that its order denying the PTD application should be upheld by this court because allegedly relator failed to meet his "burden of proof" of supporting his PTD application under the commission's rules. The commission here claims that Dr. Lehman's report fails to meet the requirements of Ohio Adm. Code4121-3-34(C)(1), which states:
{¶ 118} "Each application for permanent total disability shall be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent and total disability compensation. * * * If the application for permanent total disability is filed without the required medical evidence, it shall be dismissed without hearing."
{¶ 119} According to the commission in this action, because Dr. Lehman is not a psychologist or psychiatric specialist, his report does not meet the requirements of Ohio Adm. Code 4121-3-34(C)(1) for support of the PTD application.
{¶ 120} The commission's argument here is inconsistent with its failure to take action at the time the PTD application was filed. The commission did not dismiss the PTD application, but, instead, processed it under its rules. Consequently, whether or not the commission could have dismissed the PTD application ab initio is not an issue before this court.
{¶ 121} Ohio Adm. Code 4121-3-34(C)(5)(a) provides that:
{¶ 122} "During the sixty days following the date of the filing of the permanent and total disability application, the claims examiner shall perform the following activities:
{¶ 123} "* * *
{¶ 124} "(iii) Schedule appropriate medical examination(s) by physician(s) to be selected by the industrial commission."
{¶ 125} The commission has already scheduled several medical examinations under its rules. It is required to consider all the allowed conditions of the industrial claim. State ex rel. Johnson v. Indus. Comm. (1988), 40 Ohio St.3d 339; State ex rel. Cupp v. Indus. Comm. (1991), 58 Ohio St.3d 129; State ex rel. Didiano v. Beshara (1995),72 Ohio St.3d 255; and State ex rel. Roy v. Indus. Comm. (1996),74 Ohio St.3d 259. That the commission has exercised its discretion to reject the report of its own medical specialist does not give it cause to conclude, as it suggests here, that the claimant has failed to meet his burden of proof on the PTD application. The commission must schedule relator for a new medical examination when the report of its specialist is rejected and there is no other evidence that the commission finds persuasive.
{¶ 126} Relief pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315, is inappropriate here. Ordinarily, where the commission abuses its discretion in a PTD determination on the threshold medical issue, a limited writ of mandamus is the appropriate remedy. State ex rel. Corona v. Indus. Comm. (1998), 81 Ohio St.3d 587.
{¶ 127} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of May 15, 2001, to further process the PTD application in a manner consistent with this magistrate's decision, and to enter a new order that either grants or denies the PTD application.
 KENNETH W. MACKE MAGISTRATE
[1] A clear indication by the commission of the residual medical capacities it believes the claimant to possess is vital to a non-medical review, for it is within this framework that vocational factors are analyzed. State ex rel. Corona v. Indus. Comm. (1998),81 Ohio St.3d 587.